NOT FOR PUBLICATION                                                                                    (Docket No. 1)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| PATRICIA WOODS, | : | |
| Plaintiff, | : | Civil No. 08-6025 (RBK) |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Patricia Woods' ("Plaintiff" or "Ms. Woods") appeal of a final decision of the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's application for disability benefits. For the reasons that follow, the Court will vacate the decision of the Administrative Law Judge and remand for further proceedings consistent with this opinion.

**I.     BACKGROUND**

   **A.     Facts**

Ms. Woods is a thirty-nine year old woman with twelve years of education. In the past, Ms. Woods has worked in the banking industry as a head teller/customer service representative and as a teller/administrative assistant. In 1997, Ms. Woods ceased working.

On March 25, 1997 Ms. Woods was diagnosed with bilateral conductive hearing loss

1

potentially resulting from injuries sustained in a motor vehicle accident or alternatively from a condition known as otosclerosis.  On June 18, 1997, Ms. Woods underwent a surgical procedure known as a stapendectomy.  Despite initial improvements, the procedure was not successful in the long-term, and Ms. Woods' physicians considered her hearing loss permanent.  Ms. Woods's hearing loss gradually worsened with time.  Ms. Woods currently suffers from moderate to moderately-severe hearing loss in her right ear and severe to profound hearing loss in her left ear.

Since losing her hearing, Ms Woods has suffered from depression and anxiety.  Ms. Woods testified that her reduced ability to hear caused her to cease interacting with and talking to people and that her ability to concentrate abated.  In 1997, Ms. Woods briefly saw a psychiatrist for her depression.  After a few months, she decided to discontinue psychiatric treatment and initiate psychological treatment with a Dr. Marie Caruso.  Ms. Woods was treated by Dr. Caruso for approximately one year.  Ms. Woods discontinued treatment when she became unable to afford continued treatment.  Since 1999, Dr. Gross has prescribed Ms. Woods with anti-depressant medication.

On January 22, 2003, Ms. Woods was involved in another automobile accident.  Ms. Woods suffered a herniated disc in her back, which contributed to the development of degenerative disc disease.  On February 20, 2003, Ms. Woods underwent a psychological evaluation with Dr. John McGowan. Dr. McGowan diagnosed Ms. Woods with acute stress disorder "directly referable from the motor vehicle accident." (R. 345).  Dr. McGowan recommended a limited-time course of psychotherapy and pain management training.  (R. 346.)  Ms. Woods participated in twenty-eight individual psychotherapy sessions from May 2003 through March 2004.  During the course of her treatment, Ms. Woods told Dr. McGowan that her

2

hearing troubles and nervousness were "markedly increased" as a result of the 2003 automobile accident. Dr. McGowan concluded that Plaintiff suffered from acute stress disorder, "directly referable from the motor vehicle accident." (R. 345.)

On March 31, 2004, Plaintiff filed an application for a period of disability and disability insurance benefits, asserting an alleged onset date of May 1, 1997. The Commissioner denied Plaintiff's claim on December 20, 2004 and upon reconsideration on April 21, 2005.

On November 7, 2006, Ms. Woods's longtime treating physician, Dr. David Gross completed a Medical Assessment of Ms. Woods regarding her ability to do work-related activities. Dr. Gross found that Plaintiff had a poor or non-existent ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, and maintain attention/concentration due to her difficulty concentrating and easy frustration. (R. 348.) He also found that Plaintiff had a poor or non-existent ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability due to her frequent headaches, somatic pains, and irregular sleep patterns. (R. 349.) Dr. Gross considered Plaintiff's statements regarding her symptoms to be credible, noting that these symptoms have been "consistent and worse over the past 10 years." (R. 353.) On the basis of the foregoing, Dr. Gross concluded that Ms. Woods was "totally disabled." (R. 352.)

Plaintiff requested a hearing which was held on November 8, 2006 before Administrative Law Judge ("ALJ") Daniel L. Shellhaner. Ms. Woods, represented by counsel, appeared and testified at the hearing. Ms. Woods indicated that in 1997 – beginning a few days after her ear surgery – she would not have been able to hear a bank customer speaking to her, even from a short distance. (R. 367.) Ms. Woods testified that her hearing loss, in conjunction with the death

of her father, plunged her into a state of depression. (Id.) Ms. Woods noted that her depression led to physical symptoms and that she was "on the verge of a nervous breakdown." (Id.) She testified that she experienced difficulty sleeping and had serious nightmares. (R. 368.) She further testified that her depression limited her ability to interact with the public and her supervisor because she "really didn't talk to anybody" not even her friends. (R. 369.)

A vocational expert also appeared and testified at the hearing. The ALJ asked the vocational expert if an individual who could only minimally interact with the public and who could not be exposed to noise intensity levels above moderate could perform either of Ms. Woods's past relevant occupations. The vocational expert replied that an individual limited to minimal public interaction could not perform as a head teller but could likely perform as an administrative assistant. The vocational expert also opined that if the hypothetical individual had a "poor ability to interact with supervisors" that person would not be able to perform any kind of work because every job requires a minimal ability to interact with supervisors.[1] (R. 393.)

### B.   The ALJ's Decision

The ALJ found that Ms. Woods was not disabled from her alleged onset date through her last insured date of December 31, 2000 ("DLI").[2]

The Commissioner conducts a five step inquiry to determine whether a claimant is

---

[1] The vocational expert did not consider ability to interact with co-workers as equally crucial to employment. (R. 394.)

[2] For Disability Insurance Benefits, a claimant must meet the insured requirements of the Social Security Act. An impairment, even an impairment which rises to a disabling level, cannot be the basis for a determination of disability when the impairment arose or reached disabling status after the date last insured. See De Nafo v. Finch, 436 F.2d 737, 739 (3d Cir. 1971). In this case, the ALJ found, and the parties do not appear to dispute, that the Plaintiff last met the insured status requirements on December 31, 2000.

disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." 20 C.F.R. § 404.1520(a). Such activity bars the receipt of benefits. Jones, 364 F.3d at 503. The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner proceeds to determine whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's residual functional capacity ("RFC") and analyze whether the RFC would enable the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity at any time from her alleged onset date through DLI. At step two, the ALJ found that Plaintiff suffered from the severe impairment of bilateral hearing loss. The ALJ also found that Plaintiff suffered from depression, a herniated lumbar disc with radiculopathy, vertigo, and residual effects of left knee arthroscopy. The ALJ noted, however, that these impairments were not severe at or prior to DLI. At step three, the ALJ determined that Plaintiff's hearing loss did

5

not meet or medically equal Listing 2.08. The ALJ proceeded to conclude that Plaintiff's RFC limited her to minimal interaction with the public and to an environment with a noise intensity level of moderate or below. In making this determination, ALJ Shellhaner considered the record evidence of Plaintiff's hearing loss, depression, back pain, and vertigo.

The ALJ's disability analysis ended at step four. At this step, the ALJ found that Plaintiff was able to perform her past relevant work as an administrative assistant prior to DLI, and therefore was not disabled. Although the ALJ found Plaintiff's testimony regarding her symptoms to be "generally credible," he expressed concern that Plaintiff's present limitations were not as significant as her limitations prior to DLI. (R. 18.) The ALJ noted that "[w]hile the claimant did have hearing loss prior to [DLI], the record indicates that this condtiion has gotten progressively worse." (Id.) As to Plaintiff's depression, the ALJ conceded that Dr. Gross diagnosed Plaintiff with depression as early as 1997, but was impressed by Plaintiff's statement to Dr. McGowan that her pre-automobile depression was "brief," and with Dr. McGowan's opinion that her increased depression stemmed from her 2003 accident and subsequent hearing loss. On the whole, the ALJ was convinced that Plaintiff's "mental state deteriorated with her physical state." (R. 19.)

### III.   STANDARD OF REVIEW

District court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel,

186 F.3d 422, 427 (3d Cir. 1999)).  If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d at 360).

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.").  The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict.  Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (quoting Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978))).  Furthermore, evidence is not substantial if it constitutes "not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."  Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

### III.   DISCUSSION

Plaintiff contends that the ALJ's decision to deny disability benefits at step four did not properly take into account the effects of her depression on her ability to work prior to DLI.  To

this end, Plaintiff assigns error to the ALJ for his alleged failure to find that her depression qualified as a "severe impairment" and his failure to grant controlling weight to Dr. Gross's medical opinion that Plaintiff's depression severely limited her ability to interact with supervisors and co-workers.

Strictly speaking, Plaintiff's first argument misses the mark.  At step two, the ALJ determined that Plaintiff's hearing loss qualified as a "severe impairment."  Accordingly, the ALJ did not make a step two finding of "not disabled," and Plaintiff's claim survived to be considered at subsequent steps in the disability analysis.  As the Third Circuit has explained, the function of the analysis at the second step is to promote administrative efficiency by winnowing out clearly frivolous claims early in the process.  Newell v. Comm'r of Social Sec., 347 F.3d 541, 546 (3d Cir. 2003).  Thus, even if the ALJ erroneously characterized Plaintiff's depression as non-severe, such an error would, strictly speaking, be harmless.  See Salles v. Comm'r, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Rivera v. Comm'r of Soc. Sec., 164 Fed. Appx. 260, 262 n.2 (3d Cir. 2006).  That being said, the Court understands the Plaintiff's severity argument to go to the larger issue in the case of whether the ALJ gave appropriate consideration to Plaintiff's depression, an issue to which the Court now turns.

In this case, the ALJ found Plaintiff not disabled at step four.  As noted, the ALJ must determine at step four whether the claimant retains the RFC to perform her past relevant work. RFC is defined as "'the most [the claimant] can still do' in a work setting, despite physical and/or mental limitations, considering all relevant evidence in the record."  Ross v. Astrue, No. 08-4980, 2009 WL 4250060, at *3 n.1 (D.N.J. Nov. 24, 2009) (quoting 20 C.F.R. § 404.1545(a)(1)-(2), 416.945(a)(1)-(2)).  The ALJ is required to consider the limitations rising from all of a

claimant's impairments, including impairments the ALJ has found to be non-severe. 20 C.F.R. § 404.1545; Salles v. Comm'r of Social Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007) (unpublished opinion). As always the ALJ's explanation need not follow any particular format, but must provide analysis sufficient for meaningful judicial review. Brownstein v. Barnhart, No. 05-2257, 2009 WL 3584458, at *6 (D.N.J. Oct. 26, 2009).

The ALJ found that Ms. Woods was impaired by depression prior to DLI.[3] (R. 15.) The ALJ's opinion also appears to find that Ms. Woods' depression limited her ability to work prior to DLI. For example, the ALJ observed that "while the claimant has many significant limitations at present, the record clearly establishes that the claimant was not nearly as limited" at DLI. (R. 18.) The "not nearly as limited" language strikes the Court as a tacit admission that the ALJ did in fact consider the Plaintiff's ability to work to be appreciably limited by her depression pre-DLI. Indeed, the Plaintiff testified that her pre-DLI depression limited her ability to interact with people at work, and the ALJ did not discredit this testimony. In fact, he found Ms. Woods's allegations regarding her symptoms to be "generally credible." (R. 18.) Accordingly, the ALJ should have assessed Ms. Woods's ability to conduct her past relevant work in light of the combined limitations flowing from both her hearing loss and her depression.

It is not clear whether the ALJ ever considered these combined impairments. For example, the ALJ never articulated how Ms. Woods's pre-DLI depression limited her ability to

---

[3] This finding is well supported by the record. See (R. 329) (Dr. Gross's treatment records from 3/3/1999 indicate that Plaintiff suffers from "lots of stress"); id. (Dr. Gross's treatment records from 1/28/1999 indicate that Plaintiff is "having marital problems due to sister"); R. 326 (Dr. Gross's treatment records from 7/5/1999 indicate that Plaintiff copes with "lots of stress at home" and "people threatening . . . her family"); R. 299-328 (Dr. Gross's treatment records indicate that he has prescribed Plaintiff anti-depressants since 1999); R. 369-71 (Plaintiff was treated by a psychiatrist for a few months and a psychologist for a year).

work.  In fact, the closest the ALJ comes to explaining what the Plaintiff's depression prevented her from doing pre-DLI is to observe that Plaintiff could do more before DLI than she can do now.  This observation may be true, but it does not assist this Court's review.  Indeed, without knowing the limitations the ALJ believed were caused by Plaintiff's depression, the Court cannot evaluate with any degree of certainty whether the ALJ's RFC determination was proper.  Likewise, being unable to assess the propriety of the assigned RFC precludes the Court from accurately assessing whether the ALJ properly utilized the vocational expert's testimony.  See Myers v. Comm'r of Social Sec., No. 08-2906, 2009 WL 2445129, at *1 (3d Cir. Aug. 11, 2009) (quoting Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002)) ("Sufficient hypothetical questions will . . . 'reflect all of a claimant's impairments'"); Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.").  The question of whether the ALJ considered all of Plaintiff's limitations is of course critical to the proper resolution of this case due to the vocational expert's uncontradicted testimony that a person who is unable to interact with his supervisor would be incapable of performing work as an administrative assistant.

Even if it were possible to read the ALJ's opinion as standing for the proposition that Plaintiff's pre-DLI depression did not cause any appreciable limitations on Plaintiff's ability to work, such a reading does not lead inexorably to the conclusion that the ALJ's decision was based on substantial evidence.  For example, if the ALJ believed that Plaintiff's pre-DLI depression did not limit her ability to work, he should have explained how such a finding comports with his finding that Plaintiff's statements concerning her symptoms – including her

allegation that her pre-DLI depression significantly reduced her ability to interact with her supervisors – were "generally credible." Similarly, the ALJ should have addressed why he failed to give Dr. Gross's report on Plaintiff's limitations the "great weight" generally required by the Third Circuit and federal regulations.  See Vaneman v. Comm'r of Social Sec. Admin., No. 04-4687, 2009 WL 2143649, at *7 (D.N.J. July 14, 2009).[4]

In sum, the Court is unable to determine from the ALJ's explanation whether he based his decision on substantial evidence.  Because a different result could have obtained had the ALJ properly evaluated and explained the evidence, the Court will remand the case to the ALJ for further proceedings consistent with this opinion.  See id. at *12.  On remand, the ALJ should determine how Ms. Woods's depression limited her ability to work pre-DLI and expressly state it on the record.  The ALJ should also determine, through appropriate means, the temporal scope of Dr. Gross's 2006 report.  If Dr. Gross's findings apply pre-DLI, the ALJ should either accept them or explain his decision to give those findings reduced weight.

---

[4] With respect to Dr. Gross's report on Plaintiff's limitations, it is worth noting that the ALJ does not appear to have complied with social security regulations governing consideration of ambiguous treating physician's reports.  Pursuant to SSR 96-5p, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner (July 2, 1996), the ALJ must make every reasonable effort to re-contact treating sources when they provide opinions on issues reserved to the commissioner and the bases of these opinions are not clear.  Here, Dr. Gross's report purports to offer his opinion on the issue of Ms. Woods's residual capacity for past relevant work.  (R. 347-53.)  Although this report is ostensibly based upon Dr. Gross's continuous medical care of Ms. Woods, it is unclear whether he bases these opinions on Ms. Woods's medical condition prior to DLI, afterwards, or both.  See (R. 353) (Q: "[D]o you believe that claimant's statements as to his/her symptoms are credible?"  A: "Yes and they have been consistent and worse over the past 10 years").  Thus, on remand, the ALJ should make reasonable efforts to resolve the temporal ambiguity surrounding Dr. Gross's 2006 report.  In addition to complying with the applicable regulations, such an inquiry will likely facilitate proper resolution of the case.

IV.	CONCLUSION

For the reasons expressed above, the Court shall vacate the decision of the ALJ and remand this matter to the Social Security Administration for proceedings consistent with this opinion.  An appropriate Order shall issue.


Dated: 12-17-2009	/s/ Robert B. Kugler
	ROBERT B. KUGLER
	United States District Judge